**HOWARD UNIVERSITY and Mori Diane, Plaintiffs,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

Civ. A. No. 1120-73.

United States District Court, District of Columbia.

Dec. 10, 1973.

Dorsey Edward Lane, Washington, D. C., for plaintiffs.

Philip B. Brown, Cox, Langford & Brown, Washington, D. C., Charles F. Clarke, Cleveland, Ohio, Michael Scott, Washington, D. C., Squire, Sanders &

Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

Howard University placed third in the 1970 National Collegiate Athletic Association (NCAA) soccer championship and first in 1971. Acting on complaints by other members, the NCAA subsequently determined that Howard had fielded one ineligible foreign player in 1970 and four ineligible foreign players in 1971. For these and other infractions not here relevant and following a hearing conducted in accordance with the NCAA Constitution and By-Laws, Howard was penalized after the 1972 soccer season by exclusion from the 1973 soccer championship and was directed to return the team trophies for 1970 and 1971 in accordance with a mandatory NCAA rule applicable in such circumstances.

This suit, brought by the University and one of the foreign soccer players declared ineligible, seeks injunctive and declaratory relief based on the broad claim that the applicable NCAA rules and procedures denied players equal protection and due process as required by the United States Constitution. The case proceeded non-jury on stipulated documents supplemented by oral testimony and is now before the Court on briefs following full argument.

■ Before turning to the merits, the question of the Court's subject-matter jurisdiction must be resolved. In order to state a claim under the Fifth or Fourteenth Amendment, plaintiffs must establish that NCAA's decisions constitute state or federal action. The NCAA is a voluntary, non-profit association composed of approximately 664 colleges, universities and other institutions of learning, 45 athletic conferences, and some 60 associate or affiliated organizations. Its influence and activities are felt nationally. Approximately fifty percent of the institutional members are state supported and the membership includes the Army, Navy, Air Force and Coast Guard Academies.

The Association is governed by a complex manual which contains the Constitution, the By-Laws and various interpretations and executive actions implementing the same. The Constitution and By-Laws have been developed at annual conventions, and the affairs of the Association are conducted between such conventions by an eighteen-member council, its executive committee, and a paid staff. Investigators and lawyers on the staff interpret and enforce the large body of NCAA rulings and precedents.

The Association's purposes are well defined by its Constitution. It is committed to the maintenance of collegiate athletics as an integral part of the educational program and to the elimination of professionalism from college athletics. To this end, it sponsors intercollegiate programs of member institutions, including championships, and concerns itself with admission policies, financial aid, eligibility, etc. The NCAA encourages its member institutions to adopt rules to comply with satisfactory scholarship standards, sportsmanship and amateurism. The Association has established itself as a major influence throughout the college community. Member institutions receive approximately $14,000,000 annually from NCAA-sponsored events, and there is enormous college interest in these events.

Some 100,000 foreign or alien students matriculate in this country and those that are athletes are subject to NCAA regulations if they attend a member institution. Howard University is a voluntary member of the NCAA and is particularly and understandably concerned with the participation of foreign students in college athletics. There are some 2,600 foreign students enrolled at Howard and they constitute about twenty-five percent of the total student body. Although most of these students are also black, no claim of racial discrimination has been advanced.

Under all of these circumstances, while Howard is not itself a governmental institution, its athletic affairs and related educational policies are affected by the concerted action of the many state and federal institutions that participate as NCAA members in the promulgation and enforcement of the Association's rules, regulations and procedures. This involvement by state and federal institutions is pervasive and bears directly upon the subject matter of the complaint. The actions of these institutions, in short, caused the alleged injuries. Thus, government action is clearly shown and the Court has jurisdiction. *See* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961).[1]

Coming, then, to the merits, the plaintiffs contend that the NCAA Constitution and By-Laws governing eligibility of foreign players are arbitrary and discriminate irrationally against such students, whether these rules are viewed singly or in combination.[2] It is further urged that the penalties that were imposed following rule infraction hearings before the appropriate NCAA bodies denied due process, particularly to the individual students affected, such as plaintiff Mori Diane. The three substantive rules which are the focus of the controversy are the so-called five-year rule, the 1.600 rule and the foreign-student rule. The text of each rule is attached as an appendix to this Memorandum. It should be recognized that these particular rules fit into a complex, intricate system of other regulations and procedures designed to further the legitimate purposes of the NCAA as they have been previously summarized. The Court, in considering each of these rules separately, must give substantial deference to the NCAA's considered judgment and experience as to the most appropriate means of furthering its legitimate goals.

The five-year rule is designed to compel the regular progression of athletes through a four-year college curriculum without unnecessary or material delay. The rule prevents a student athlete from exhausting his eligibility at one institution and then simply repeating the process by enrollment in another institution for an additional four years, or from otherwise artificially prolonging his education for the purpose of extending his athletic career. This rule is applicable to foreign students and American citizen students alike. It is reasonable and fundamental to the Association's objectives and in no way discriminates against aliens.

The 1.600 rule applies only to championship events. Its effect is to require that students entering an institution, whether or not that student is an alien, must, by the Scholastic Aptitude Test or the American College Test, establish a predictable grade which is something in the range of D+ to C−. Students unable to achieve this educational standard are not permitted to engage in athletics during their freshman year. The rule is also immediately and appropriately related to the purposes of the Association. It prevents, or at least reduces, the exploitation of young men recruited for athletics who are not representative of the student body, and it serves to foster the Association's objective of limiting athletic competition to bona fide students who are primarily engaged in academic pursuits. This rule

1. It is unnecessary to consider the Court's possible jurisdiction under the evolving doctrine of Marjorie Webster Jr. Col. v. Middle States Assn. of C&SS, 139 U.S.App.D.C. 217, 432 F.2d 650 (1970), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970).

2. Several federal courts have recently considered similar challenges to the procedural rules of the NCAA. *See* Buckton v. NCAA, 366 F.Supp. 1152 (D.Mass.1973); Samara v. NCAA, C.A. No. 104–72–A (E.D.Va. May 1, 1973); Parish v. NCAA, 361 F.Supp. 1214 (W.D.La.1973) (summary judgment denied), 361 F.Supp. 1220 (W.D.La.1973) (preliminary injunction denied); Assoc. Students, Inc. v. NCAA, C. No. S–2754 (E.D.Cal. May 25, 1973) (preliminary injunction granted); Curtis v. NCAA, C–71–2088–ACW (N.D.Cal. Feb. 1, 1972) (preliminary injunction granted).

appears again to be reasonably and narrowly related to the legitimate objectives and purposes of the Association, particularly since it is limited to championship games during the freshman year. The rule may have a somewhat greater impact on foreign students, who might have difficulty taking the required American tests in their home countries, but the fact that any student may take such tests soon after entering an American college vitiates this incidental discrimination.

The problem of how best to assure minimal academic accomplishment by college athletes is admittedly complex and subject to debate. The record shows that the Association has been flexible in attempting to develop an appropriate standard and that in fact rule 1.600 is up for reconsideration at the next annual convention, but it was in effect at the relevant time and there is no reason to find it inappropriate in any way. The evidence established that certain NCAA institutions blatantly solicited established foreign student athletes to improve team quality in total disregard for academic proficiency, and it is entirely reasonable for the Association to apply the minimal standard indicated in this rule to aliens to avoid a reoccurrence of such abuses.

■ The foreign-student rule, on the other hand, contains an explicit classification according to alienage and one that is, on balance, unjustified. Under its terms, foreign students lose a year of eligibility for every year after their nineteenth birthday in which they have participated in athletic competition. No such limitation is placed on American citizens. Plaintiffs urge that this rule is arbitrary, unreasonably, excessively vague, and designed to favor United States citizen students over aliens. These allegations place a heavy burden upon the defendant, for the Supreme Court has recently ruled that classifications based on alienage are inherently suspect and should be subject to close judicial scrutiny. In re Application of Fre Le Poole Griffiths for Admission to the Bar, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). In this context, the Court noted that:

> In order to justify the use of a suspect classification, a State must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is "necessary . . . to the accomplishment" of its purpose or the safeguarding of its interest.

*Id.* at 721–22, 93 S.Ct. at 2855 (footnotes omitted).

While the NCAA is properly concerned with preventing older players coming from abroad on the pretext of educational objectives and dominating championship competition because of age and prior sports activity, it was not demonstrated to the Court's satisfaction that there are not other less restrictive means available for accomplishing these objectives. The flat age restriction, stated in the vague terms of the rule's reference to *any* team or individual participation in athletic competition, results in an arbitrary discrimination against aliens. To meet a felt need, the Association has, in effect, "thrown the baby out with the bath."

■■ On the remaining facet of the case, the Court has concluded that Howard was in no way denied due process. In applying due process standards to a voluntary organization such as NCAA, it must be recognized that Howard's membership is not essential to an educational or athletic program. Moreover, while a full and fair hearing must be provided before a penalty is imposed, no particular form of hearing is mandated for all disciplinary proceedings. *Cf.* Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The adequacy of the hearings must be viewed in the light of the facts and circumstances surrounding the infractions. Here, where the facts showing violations of NCAA rules were not disputed by Howard, the fact that an investigation report was not disclosed or that witnesses, other than representatives of Howard and its counsel, were not present does not constitute denial of due process, even though in some other context some type of con-

frontation with witnesses and/or access to investigative reports, if relied on by the council, might be required. NCAA proceeded compassionately, affording Howard the fullest opportunity to advance its views on the issues presented. Howard was given timely notice of the charges against it and an opportunity to defend its actions before the Committee on Infractions and the full council. It will also be permitted to appeal the adverse rulings of these bodies to the 1974 annual convention, to be held in January of that year.

The due process complaint of Diane is also without merit, for he has not even pursued the remedy which the NCAA sincerely and openly continues to tender to him. An individual athlete may obtain a hearing on any penalty imposed upon him, particularly if its effect extends beyond a year, Stip. p. 90, but Diane has never requested such a hearing.

Throughout the proceedings Howard has complained with considerable justification that the NCAA rules, viewed as a whole, are not precisely drawn, that they contain at least some superficially contradictory provisions and have had to be interpreted periodically on a more or less ad hoc basis because of their vagueness. There is no doubt that the rules appear to have proliferated over the years in response to various pressures from time to time. The rules obviously need to be tightened and simplified but this does not lead to the conclusion that their implementation has been discriminatory, that an adequate opportunity to be heard has been denied, or that in this particular case there is any justifiable ground for Howard's unintentional but admitted violations.

The foregoing shall constitute the Court's findings of fact and conclusions of law and the Order filed herewith shall be entered to reflect the determinations made.

## APPENDIX

*The "Five-Year" Rule:*

"An institution shall not permit a student-athlete to represent it in intercolle-giate athletic competition unless he meets the following requirements of eligibility:

"(a) He must complete his seasons of participation within five calendar years from the beginning of the semester or quarter in which he first registered at a collegiate institution . . . . "
NCAA Constitution Section 3–9–(a) (NCAA Manual, p. 15). [The text of this rule is identical in the 1970–71, 1971–72 and 1972–73 NCAA Manuals.]

*The "1.600" Rule:*

"A member institution shall not be eligible to enter a team or individual competitors in an NCAA-sponsored meet, unless the institution in the conduct of its intercollegiate athletic programs:

"(1) Limits its scholarship or grant-in-aid awards (for which the recipient's athletic ability is considered in any degree), and eligibility for participation in athletics or in organized athletic practice sessions during the first year in residence to student-athletes who have a predicted minimum grade point average of at least 1.600 (based on a maximum of 4.000) as determined by the Association's national prediction tables or Association-approved conference or institutional tables . . . . "
NCAA By-Law 4–6–(b)(1) (NCAA Manual, pp. 53–54). [This rule has not changed, as applied to the facts of the case, since January, 1970. It was changed in January, 1973,—*after* the action by the NCAA Council of which plaintiffs now complain.]

*The "Foreign-Student" Rule:*

"Any participant in a National Collegiate Athletic Association event must meet all of the following requirements for eligibility . . . .

"(f) He must not previously have engaged in three seasons of varsity competition after his freshman year, it being understood that:

"(2) Participation as an individual or as a representative of any team whatever in a foreign country by an alien student-athlete in each twelve-month pe-

riod after his nineteenth birthday and prior to his matriculation at a member institution shall count as one year of varisty competition."

NCAA By-Law 4–1–(f)(2) (NCAA Manual, p. 49). [As applied to intercollegiate soccer, this rule has not changed in substance since January, 1970, except that in January, 1971, the age limit for measuring foreign competition was lowered from age 20 to age 19.]

### ORDER

The foreign-student rule, NCAA By-Law 4–1–(f)(2), is declared to constitute a denial of equal protection under the Fourteenth Amendment to the United States Constitution, its future enforcement by NCAA is permanently enjoined, and the NCAA is directed to expunge any penalty imposed upon Howard University, or directly or indirectly on any soccer player matriculating at Howard University, based solely upon this By-Law.

In all other respects the complaint is dismissed as to each plaintiff. Each party shall bear its costs.

So ordered.